Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHRISTOPHER C. LUKE                                    PLAINTIFF

VS.                        CIVIL ACTION NO. 3:14cv240 DPJ-FKB

NESHOBA COUNTY, MISSISSIPPI, ET AL.                   DEFENDANTS

_____

DEPOSITION OF SONYA RAINEY
_____

Taken at the instance of the Plaintiff at

Wade White, PLLC

501 West Main Street

Philadelphia, Mississippi

Wednesday, April 1st, 2015

Commencing at 10:13 a.m.

\*\*\*\*\*\*\*\*

Reported by:

Katherine Lusk, CCR 1731

EMM, INC. REPORTING   (601)506-8261
EMMREPORTING@GMAIL.COM

EXHIBIT "I"

Page 2

1          APPEARANCES
2
3   COUNSEL FOR THE PLAINTIFF:
4     ROBERT O. WALLER, ESQUIRE
      WALLER & WALLER
5     220 South President Street
      Jackson, Mississippi 39201
6     Post Office Box 4
      Jackson, Mississippi 39205-0004
7     Phone: (601) 354-5252
      Fax: (601) 354-2681
8     bobwaller@wallerandwaller.com
9
10  COUNSEL FOR THE DEFENDANTS:
11    STEVEN J. GRIFFIN, ESQUIRE
      DANIEL COKER HORTON & BELL
12    4400 Old Canton Road, Suite 400
      Jackson, Mississippi 39211-5982
13    4400 Old Canton Road, Suite 400
      Jackson, Mississippi 39211-5982
14    Phone: (601) 969-7607
      Fax: (601) 969-1116
15    sgriffin@danielcoker.com
16
17
18
19
20
21
22
23
24
25

Page 3

1            INDEX
2
3   Style...................................1
4   Appearances.............................2
5   Index...................................3
6   Examination by Mr. Waller...............4
7   Examination by Mr. Griffin..............15
8   Certificate of the Court Reporter.......23
9   Certificate of the Deponent.............24
10
11           EXHIBITS
12
13  1 - Health Care Services, Policy No. F-101............9
14  2 - Nurse's Report..................10
15
16
17
18
19
20
21
22
23
24
25

Page 4

1            SONYA RAINEY,
2   having first been duly sworn, was examined and testified
3   as follows:
4       MR. WALLER: Okay. This deposition of Sonya
5   Rainey is being taken pursuant to notice and pursuant to
6   the Rules of Civil Procedure. Objections except as to
7   form shall be reserved for the trial in the matter.
8       Do you have anything you want to add, Mr.
9   Griffin?
10      MR. GRIFFIN: No, sir. That's fine.
11           EXAMINATION
12  BY MR. WALLER:
13    Q. Okay. What is the name -- what is your name as
14  it appears on your birth certificate?
15    A. Sonya Graham.
16    Q. And you're married name's Rainey?
17    A. Uh-huh (affirmative).
18    Q. And what is your address?
19    A. 11801 Highway 16 East, Philadelphia.
20    Q. And how long have you lived at that address?
21    A. Twenty-five years.
22    Q. Where were you born?
23    A. Newton County.
24    Q. What's your date of birth?
25    A. 9/12/62.

Page 5

1     Q. High school education?
2     A. Philadelphia High School.
3     Q. Okay. What other education?
4     A. Meridian Community College.
5     Q. Okay. What's your degree -- what's your nursing
6   degree?
7     A. Registered nurse.
8     Q. RN, okay. What's your work history, briefly?
9     A. I worked in emergency room at Neshoba General,
10  when I first got out of school, for a couple of years,
11  and then moved over to the Neshoba County and worked
12  there. Well, I was employed both places until about 10
13  years ago.
14    Q. Where do you work -- where have you worked since
15  then?
16    A. Just Neshoba jail.
17    Q. Okay. And that's full time or part time?
18    A. Full.
19    Q. And what are your hours there?
20    A. 8:00 to 1:00, Monday through Friday. That sounds
21  part time, but it's actually considered full time.
22    Q. What is your husband's name?
23    A. I'm divorced.
24    Q. Okay. Children?
25    A. Seth, Nate, and Caitlin.

2 (Pages 2 to 5)

Page 6

1    Q.  How old are they?
2    **A.  Twenty-seven, 26, and 12.**
3    Q.  The 26-year-old name is what?
4    **A.  Nathan.  He's the middle one.**
5    Q.  He's 26?
6    **A.  I think he's 26.**
7    Q.  Well, that's close enough.  I mean, he's old
8    enough to vote?
9    **A.  Yeah.  Yeah.**
10   Q.  That's kind of what I'm getting at.  And his last
11   name is?
12   **A.  Chaney.**
13   Q.  And your other -- you have another child that's
14   over 18?
15   **A.  Yeah.  Seth and Nathan are over 18.**
16   Q.  Okay.  Do you have other relatives that live in
17   Neshoba County?
18   **A.  All -- pretty much all of my relatives.**
19   Q.  And what -- tell me your maiden name, again.
20   **A.  Graham.**
21   Q.  Graham, okay.  So they're either Grahams, or
22   they're Raineys.  Is that right?
23   **A.  They're Grahams, Johnsons --**
24   Q.  Okay.  You've got lots of relatives around here.
25   **A.  Uh-huh (affirmative).**

Page 7

1    Q.  We'll leave it at that.  Have you given a
2    deposition before?
3    **A.  I don't know if I have or not to tell you the**
4    **truth.  I can't remember.**
5    Q.  Okay.  All right.  This shouldn't take long.
6    **A.  Okay.**
7    Q.  What is your job description with the jail?
8    **A.  Nurse.**
9    Q.  Okay.  And do you have a job description from the
10   jail -- a printed job description is what your duties
11   are?
12   **A.  I don't know if I do have a printed job**
13   **description or not.  You know, like I said, I've been**
14   **there 20 years.  I can't remember when I first started**
15   **if they gave me a job description or not.  It's been a**
16   **long time ago.**
17   Q.  You are the job description, probably.  There
18   wasn't anybody prior to you, was there?
19   **A.  No.  Uh-uh (negative).**
20   Q.  Have you seen this document?
21   **A.  Let me get my glasses.**
22   Q.  It's entitled "Health Care Services."
23   **A.  I have seen this or some version of it.  It was**
24   **revised, and -- you know, I seen it when we first did**
25   **it.  I don't know that I've seen any revisions or**

Page 8

1    whatever, but I've seen --
2    Q.  Is that the current policy and procedure?
3    **A.  I don't know.**
4    Q.  Have you had any classes or any instruction on
5    that?
6    **A.  On this?**
7    Q.  Yes.
8    **A.  I don't think so.**
9    Q.  Okay.  Did you help draft it?
10   **A.  I did the first draft.  I know it's changed a**
11   **couple times.**
12   Q.  It's date -- it's got a date on it.  What is the
13   date on it?
14   **A.  January of '94 -- date issued January of '94;**
15   **revised October of '95.**
16   Q.  When did you start to work with the county?
17   **A.  Probably -- it wasn't January.  It was November**
18   **of '93 or '94.  I guess it was '93, but that kind of**
19   **doesn't sound right.  I don't know.  I've been there 20**
20   **years.**
21   Q.  Look at the document and see if it refreshes your
22   recollection.
23   **A.  Okay.  Yeah, I mean, I'm familiar with it.  I**
24   **helped them, you know, creating it to some extent.**
25   Q.  Do you have a copy that document?

Page 9

1    **A.  Uh-uh (negative).**
2    Q.  Okay.  I'll take it back now.
3    **A.  Okay.**
4    Q.  As far as you know, that's the current policy and
5    procedure for health care services at the jail?
6    **A.  As far as I know.  That revision date doesn't**
7    **really look right, but I don't know.**
8         MR. WALLER:  We'll mark that as Exhibit 1 to her
9    testimony.
10        (EXHIBIT 1 MARKED.)
11   BY MR. WALLER:
12   Q.  I'm going hand you another document and ask you
13   if you can identify that.
14   **A.  Yes.**
15   Q.  When was this document created?
16   **A.  Looks like 5/30 of '13.**
17   Q.  Is that -- and that date is significant for what
18   reason?
19   **A.  That would be the date that I saw him -- saw the**
20   **patient and put any -- charted.**
21   Q.  The altercation -- I have the date of the
22   altercation as 5/28.  Did you not see him -- the
23   altercation occurred after one o'clock, so I'm assuming
24   you would not have been there on that day.
25   **A.  Uh-uh (negative).**

```
                                                      Page 10
 1        MR. GRIFFIN:  Be sure you answer "yes" or "no."
 2        THE WITNESS:  Okay.
 3        MR. GRIFFIN:  So that was a no?
 4        THE WITNESS:  No.
 5   BY MR. WALLER:
 6   Q.  I'm going to go back to a calendar and look to
 7   see what the date is.
 8        MR. GRIFFIN:  Can we go off the record for just a
 9   second?
10        MR. WALLER:  Yeah.
11            (OFF THE RECORD.)
12   BY MR. WALLER:
13   Q.  May the 28th was a Tuesday.  This is the date --
14   of 2013, and that's the date that he was in a fight.
15   Then your report is dated the 30th.  Does that mean you
16   saw him on the 30th?
17   A.  That's what that means.
18   Q.  Why did you not -- why would you have not seen
19   him on the 29th -- Wednesday the 29th?
20   A.  I don't believe I was at work that day.
21   Q.  Okay.  And had you been called, you would have --
22   you would have been on-call, though.  Right?  If you
23   were needed, somebody would have called you?  You could
24   have come in?
25   A.  Well, I have no idea where I was, you know, that
```

```
                                                      Page 11
 1   day.  Usually --
 2   Q.  If you're not available and they have an
 3   emergency, what are they -- what's the procedure that
 4   they follow?
 5   A.  They'll call 911 -- well, we are kind of 911.
 6   They'll just call and get him seen by the emergency
 7   services.
 8   Q.  Why did you see him on the 30th.  Do you recall?
 9   A.  No.  When I got to work, someone -- staff or
10   Jimmy Reid or someone, I'm not sure, told me to check on
11   him, that he had been in a fight, and I needed to check
12   on him, so I did.
13   Q.  And this is your -- this is your findings?  This
14   is dated -- the time was 9:22.  So you --
15   A.  Uh-huh (affirmative).
16   Q.  "City notified of patient behavior.  I thought he
17   should be checked out by a Dr. Soriano." [sic]  Where
18   is Dr. Soriano?
19   A.  He's our physician.  He's here in town.
20   Q.  Oh, so he comes to the jail as well?
21   A.  Uh-huh (affirmative).
22        MR. GRIFFIN:  Is that "yes"?
23        THE WITNESS:  Yes.
24   BY MR. WALLER:
25   Q.  "Chief to advised me what they would do."  Now,
```

```
                                                      Page 12
 1   do you know whether or not Dr. Soriano came to the jail
 2   to see Chris?
 3   A.  I don't think so.
 4   Q.  The last statement there -- read that last
 5   statement beginning with --
 6   A.  "The Chief had EMS dispatched to check him out."
 7   Q.  Okay.  So the ambulance came and got him from the
 8   jail and took him to the hospital?
 9   A.  Well, by that time, I had left.  So I don't know
10   what -- I just know that they were coming.
11   Q.  It was some time after one o'clock that day?
12   A.  At some point in time that day.  I don't know
13   when.  I didn't get a time on that.
14   Q.  What injuries did you observe on Mr. Luke on the
15   30th?
16   A.  I don't recall any injuries.  I don't recall
17   seeing any injuries.
18   Q.  Any physical --
19   A.  Uh-uh (negative).
20   Q.  -- bruises or scars?
21   A.  I don't recall seeing that.  I didn't chart it,
22   so I'm assuming that I didn't see any.
23   Q.  Now, did you find out what his injuries were at
24   some later point after this date -- after this report
25   was entered?
```

```
                                                      Page 13
 1   A.  I don't recall that I did.
 2   Q.  And Chris -- was anybody else in a similar
 3   situation as Chris that particular time period?
 4   A.  I don't recall.
 5   Q.  Being in a fight?
 6   A.  I don't recall.
 7   Q.  Did you know Chris Luke before that day?
 8   A.  I don't think I did.
 9   Q.  So Dr. Soriano comes to the jail at your request?
10   A.  No, he comes once a week.
11   Q.  What day does he come?
12   A.  On a Wednesdays -- sometimes on Wednesday.
13   Sometimes he can't make it, and it will be Thursday.  I
14   mean, it's just --
15   Q.  Do you know what day he came that particular
16   week?
17   A.  No, I don't.
18   Q.  Do you know if he came, at all, that particular
19   week?
20   A.  I don't know.
21   Q.  But your statement is -- it's your -- that he
22   comes one day every week?
23   A.  Uh-huh (affirmative).
24   Q.  And does -- what does he do?  How long does he
25   stay and what does he do when he's there?
```

```
                                                          Page 14
 1    A. He just sees the patients that we've -- you know,
 2    that are sick or, you know, that need to be seen by a
 3    physician.
 4       Q. He writes prescriptions --
 5       A. Uh-huh (affirmative).
 6       Q. -- and that kind of thing?
 7       A. Just examines them, writes prescriptions. If
 8    they need further -- you know, he refers them to
 9    somewhere else if they need that.
10       Q. To the hospital if they need it?
11       A. Yeah. He just --
12       Q. But you don't know -- you don't if he ever saw
13    Chris Luke this particular week?
14       A. I don't know.
15       Q. Now, you say he has seizure disorder in your
16    statement. How did you know that?
17       A. I believe that he told me that he had a seizure
18    disorder, but he hadn't been on meds in several years.
19       Q. And you said, "Patient's sleeping more than
20    normal." What is that a sign of? What did that -- did
21    that alert you that he needed to be seen by a doctor?
22       A. Well, I just wanted to make sure he was
23    arousable, you know, and that sort of thing. The
24    jailers informed me of that.
25       Q. Told you that he had been asleep?
```

```
                                                          Page 15
 1       A. That he was sleeping more than normal, yeah.
 2       Q. And was he alert when you talked to him?
 3       A. He was.
 4       Q. Responsive?
 5       A. Uh-huh (affirmative).
 6          MR. GRIFFIN: Yes?
 7          THE WITNESS: Yes.
 8          MR. WALLER: I tender the witness.
 9          MR. GRIFFIN: Just a couple quick follow-up
10    questions, Ms. Rainey.
11               EXAMINATION
12    BY MR. GRIFFIN:
13       Q. In your report, it says that you advised the city
14    that he should be checked out by Dr. Soriano. When you
15    saw him that morning, did you believe that he had an
16    emergent medical need or was in any type of acute
17    distress?
18       A. No.
19       Q. If he was in -- had some type of medical
20    emergency, would you have gone ahead and contacted
21    ambulance services to come and pick him up?
22       A. Yes.
23       Q. And is that the same procedure if -- if one of
24    the jail staff members sees an inmate who is in a
25    medical emergency, at that point, would they call 911
```

```
                                                          Page 16
 1    instead of waiting on a nurse or a doctor to come visit
 2    the facility?
 3       A. Yes.
 4       Q. And why did you advise the city of Mr. Luke's
 5    condition?
 6       A. Because he was their prisoner.
 7       Q. He was a city inmate?
 8       A. Uh-huh (affirmative).
 9       Q. Just being housed at the county jail?
10       A. Right.
11       Q. And why is that important that he's a city
12    inmate?
13       A. They had the Neshoba inmates -- the county
14    inmates and the city inmates, and each department is
15    responsible for their inmate, you know, in the long run.
16       Q. As far as deciding what type of medical treatment
17    they should get or who to take him to?
18       A. Uh-huh (affirmative). I just advise.
19       Q. That's a yes?
20       A. Yes, I just advise. Uh-huh (affirmative).
21       Q. Okay. All right. And as far as being advised
22    about his seizure disorder, is that something that Mr.
23    Luke told you?
24       A. I think so. Yes.
25       Q. And did he tell you that he had not been taking
```

```
                                                          Page 17
 1    meds for the past several years?
 2       A. Yes.
 3          MR. GRIFFIN: Okay. No more questions.
 4          MR. WALLER: I would like that these two
 5    documents be marked as exhibits to her testimony.
 6              (EXHIBITS 2 MARKED.)
 7              (DEPOSITION CONCLUDED AT 10:31 A.M.)
 8                 ************
```

```
                                        Page 18
 1
             CERTIFICATE OF THE COURT REPORTER
 2
 3      I, Katherine Lusk, Court Reporter and Notary Public,
 4   and for the State of Mississippi, hereby certify that
 5   the foregoing contains a true and correct transcript in
 6   the aforementioned matter at the time and place
 7   heretofore stated, as taken by stenotype and later
 8   reduced to typewritten form under my supervision by
 9   means of computer-aided transcription.
10      I further certify that I placed the witness under
11   oath to truthfully answer all questions in this matter
12   under the authority vested in me by the State of
13   Mississippi.
14      I further certify that I am not in the employ of or
15   related to any counsel or party in this matter and have
16   no interest, monetary or otherwise, in the final outcome
17   of this matter.
18       Witness my signature and seal this the _____ day of
19   _____, 2015.
20
21      /s/Katherine Lusk_____
        Katherine Lusk, CCR # 1731
22
23   My Commission Expires:
     November 6, 2015
24
25
```

```
 1           CERTIFICATE OF THE DEPONENT
 2   DEPONENT:  Sonya Rainey
     DATE:  April 1st, 2015
 3   CASE STYLE:  Christopher C. Luke vs. Neshoba County,
     Mississippi, et al.
 4
            I, the above-named deponent in the deposition
 5   taken in the herein styled and numbered cause, certify
     that I have examined the deposition taken on the date
 6   above as to the correctness thereof, and that after
     reading said pages, I find them to contain a full and
 7   true transcript of the testimony as given by me.
            Subject to those corrections listed below, if
 8   any, I find the transcript to be the correct testimony I
     gave at the aforestated time and place.
 9   Page   Line         Comments
     ____   ____   _____
10   ____   ____   _____
     ____   ____   _____
11   ____   ____   _____
     ____   ____   _____
12   ____   ____   _____
     ____   ____   _____
13   ____   ____   _____
     ____   ____   _____
14   ____   ____   _____
     ____   ____   _____
15   ____   ____   _____
     ____   ____   _____
16
17      This the ____ day of _____, 2015.
              _____
18               Sonya Rainey
     State of Mississippi
19   County of _____
20
21      Subscribed and sworn to before me, this the _____
     day of _____, 2015.
22
23   My Commission Expires:
24   _____   _____
               Notary Public
25
```