IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHRISTOPHER C. LUKE**                                    **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 3:14cv240 DPJ-FKB**

**NESHOBA COUNTY, MISSISSIPPI; et al**                     **DEFENDANTS**

### AFFIDAVIT OF RICK VAN EGMOND

**STATE OF MISSISSIPPI**
**COUNTY OF HINDS**

    Personally came and appeared before me, the undersigned authority in and for the aforesaid jurisdiction, Rick Van Egmond, who being by me first duly sworn on oath, states the following:

    My name is Rick Van Egmond. I have been retained as an expert witness on behalf of Christopher C. Luke in the cause of action entitled *Christopher C. Luke v. Neshoba County, et al*; In the United States District Court for the Southern District of Mississippi, Northern Division; Civil Action No. 3:14cv240 DPJ-FKB. I am retired from the Hinds County Sheriff's Office where I was employed from 1994-2013. I was the Training Director from 2008-2013. I serve as an Instructor in the Detention Officer's Training Academy. The facts and assertions contained in this Affidavit are made from my own personal knowledge, and I am competent to give this Affidavit and to testify regarding the matters asserted in this Affidavit.

    I have reviewed Second Amended Complaint and Answers and Defenses to Plaintiff's Second Amended Complaint; Plaintiff's Responses to First Set of Interrogatories and Requests for Production of Documents Propounded by Defendants; Incident/Offense Report, Incident Report 13-00271 (signature illegible), Incident Report of Angel Crockett, Incident Report of Nicholas A. Walker, Incident Report of Harvey Hickman, Incident Report of Billy R. Guess, Incident Report of Jimmy N. Reid Inmate Request Forms filed at 5:05 P.M., 5:10 P.M., and 5:13 P.M. on June 6, 2013 filed by William Smith; Arrest Report and Information Sheet on Christopher C. Luke; Affidavit against William J. Smith dated June 3, 2013; Inmate Infirmary Visit Report dated May 30, 2013; Medical Assessment of Christopher C. Luke filed August 5, 2013 by Mickey P. Wallace, M.D.; Seven (7) Photographs of Injuries to Christopher C. Luke; Statement captioned "Danny's Statement"; Statement of Robert Sloan from notes; Surveillance/Security Video approximately 30 minutes in length recording the incident including the original Inmate assault, reaction of Christopher C, Luke and the Response of Detention Personnel; Surveillance/Security Video approximately 30 minutes in length recording the incidents in the Booking/Tank area of the Sheriff's Office and the reaction of Christopher C. Luke and the activities of the Jailers/Detention Officers; Depositions of Angel Crockett, Deposition of Kenneth Spears, Deposition of Joshua Burt, Deposition of Nicholas Walker, Deposition of Jimmy Reid, Deposition of Sonya Rainey,

1

Deposition of Billy Guess, Deposition of Harvey Hickman, the Deposition of Sheriff Tommy Waddell; and the Policy and Procedure Directive of the Neshoba County Law Enforcement Center.

These opinions are based on my review of the above records as well as my education, experience, training, and knowledge gained over the course of 20 years. The information that has been reviewed is that which is reasonably relied upon by experts, in my field, in forming their opinions.

Failure to Protect, Failure to Supervise and Failure to Monitor.

It is my opinion that Neshoba County failed to protect Christopher C. Luke, thus he was unlawfully assaulted by another Inmate as depicted on surveillance video in an unsupervised "day room". That Deputies were negligent in monitoring Surveillance cameras for an unreasonable length of time. That Jail and Sheriff's Office Supervisors were negligent in their Supervision of Jailers/Deputies in the Duties. That this incident and resulting injury to Christopher C. Luke would not have occurred had the Neshoba County Sheriff's Office and the named Personnel followed proper procedure in Supervising Inmates.

That Deputies were negligent in their Supervision of the Open "Day Room" and the use of the telephone which resulted in the assault of Christopher C. Luke by not following proper procedures in Supervision of Inmates and Telephone usage.

That Deputies acted with deliberate indifference in their supervision of Inmates which resulted in a delayed response time due to failure to follow proper supervisory procedures by not having a Deputy present. Evidence will show that Christopher C. Luke was assaulted and received injuries in view of cameras but did not receive medical attention immediately due to failure to monitor the surveillance cameras. That Deputies did not respond, in a timely manner, to the holding area at the apparent summons of other Inmates.

That Responding Deputies acted in a reckless manner and with deliberate indifference in not assessing the apparent medical condition of Christopher C. Luke. That Responding Deputies were negligent in their failure to follow proper procedures in dealing with an Inmate displaying symptoms of the mentally impaired.

Excessive Force.

Excessive force as viewed in law enforcement relates to any force used above the necessary force required to subdue a subject. Due to the physical condition of Christopher Luke as apparent in the surveillance video it is evident that negligence in monitoring activities in the day room led to Deputies acting in a manner inconsistent with that required to address a medical condition of a detainee.

That Deputies used unnecessary and excessive force in subduing Christopher C. Smith by failing to note the signs and indicators of the injuries consistent with mental impairment as Minimum Standards Training would have indicated.

2

That there was excessive and improper use of force in attempting to remove handcuffs from Christopher C. Luke when medical attention was needed and the handcuffs posed no immediate problem for Christopher C. Luke.

Failure to adequately access the medical condition of Christopher Luke, to summon proper Medical personnel, and Supervisory Personnel prior to moving Christopher Luke is contrary to proper procedure in responding to a Medical Emergency as prescribed in training directed by the Board of Standards and Training Division of the Mississippi Department of Public Safety and can be viewed as excessive force.

Failure to recognize the incoherent response of Christopher C. Luke and the possibility of head injuries without Medical assessment and moving Christopher C. Luke is a result of not following procedures prescribed in training directed by the Board of Standards and Training Division of the Mississippi Department of Public Safety and can be viewed as excessive force.

I have determined that use of Pepper Spray on Christopher Luke was Excessive Force due to not determining and addressing his medical condition including possible head injury, obvious disorientation and the presence of open wounds.

Failure to Provide Necessary Medical Care.

That the Neshoba County Sheriff's Office acted with deliberate indifference in their untimely response to Medical Treatment for Christopher C. Luke by not affording immediate attention to obvious injuries to Christopher C. Luke immediately after viewing the visible injuries.

That the Neshoba County Sheriff's Office acted with deliberate indifference in their failure to review surveillance tapes in a timely manner, thus delaying Christopher C. Luke's medical treatment. Immediate review of the tapes would have shown the severity of the injuries and the improper response of Deputies and would have resulted in a timely treatment of the injuries.

That Deputies acted with deliberate indifference in delaying Medical Attention to Christopher C. Luke. That the Neshoba County Sheriff's Office was negligent in their untimely response to Medical Treatment for Christopher C. Luke. That the Neshoba County Sheriff's Office was negligent in their failure to review surveillance tapes in a timely manner, thus delaying Christopher C. Luke's medical treatment.

That Responding Deputies acted with deliberate indifference disregarding their training in not assessing the apparent medical condition of Christopher C. Luke when evidence on camera would have shown the injury, and that Inmates had reported the injury.

That Responding Deputies acted with deliberate indifference in their failure to follow proper procedures in dealing with an Inmate displaying symptoms of the mentally impaired when surveillance video would have indicated a head injury to Christopher C. Luke. Following Minimum Standards Training would have indicated signs and indicators of a mental problem as a result of head injuries and would have resulted in the proper response by Deputies.

3

That Deputies acted with gross and reckless disregard and deliberate indifference in delaying Medical Attention to Christopher C. Luke with the apparent need evidenced by any one of the following indicators: mental condition, bruising, lacerations, and blood.

That the reactions of Christopher C. Luke were not aggressive but that any signs of resistance would be consistent with those of someone with a head injury as indicated in training in Detention Officers Training developed by the Board of Standards and Training.

Failure to Follow Training or Have Required Training.

That Deputies acted with deliberate indifference when they failed to follow proper procedures and practices put forth by Minimum Standards of Care for Detainees by not following accepted practices as prescribed in Detention Officer Training as prescribed by the Mississippi Department of Public Safety Board of Standards and Training, Detention Services Division.

That there was a significant delay in treatment for OCAT (Pepper) Spray for Christopher C. Luke. Video displays the adverse effect on Deputies and their efforts to negate the spray by washing and spraying the booking area, while only spraying a small amount in the Jail cell housing Christopher C. Luke.

That there was a long lapse in time before Christopher C. Luke was taken to a showering area.

That improper booking and holding procedures were used as displayed on the video surveillance of the booking area when it was evident that a female was shown moving about freely in the booking area and only after a lengthy amount of time was she photographed for intake as an inmate. This female was allowed to witness events surrounding the detaining of Christopher C. Luke following his assault. All showing disregard of training as prescribed by Detention Officer training developed by the Board of Standards and Training.

That Deputies acted with deliberate indifference when they failed to follow proper procedures and practices put forth by Minimum Standards of Care for Detainees by not following accepted practices as prescribed in Detention Officer Training as prescribed by the Mississippi Department of Public Safety Board of Standards and Training, Detention Services Division; Specifically Supervision of Inmates, Telephone Usage Supervision, Response to Medical Emergencies, and Handling a Mentally Impaired Inmate.

That Jail and Sheriff's Office Supervisors acted with reckless disregard in their Supervision of Jailers/Deputies in the Duties by not assigning personnel to surveillance cameras, assigning personnel to supervise day rooms, assigning personnel to monitor telephone usage, and failure to determine a need for medical assistance after responding to the scene.

Failure to Implement Policy and Procedures or to Follow Policy and Procedures.

I have determined that the Neshoba County Sheriff's Office does not have a Policy and Procedure Manual in place by the current Sheriff Tommy Waddell, as ordered, and is operating under an inadequate Policy and Procedure Manual adopted by a former Sheriff.

4

I have determined that the Neshoba County Sheriff's Office is negligent in issuing, accounting for, requirement of reading, and training in Policies and Procedures and Post Orders. s

I have determined that the Neshoba County Sheriff's Office does not have a Policy or Procedure regarding use of telephones by Inmates in their custody which would require the presence of a Deputy.

I have determined that Policies and Procedures have not been presented to the Personnel and have not been taught in a formal training session as so indicated in their depositions.

I have determined that Policies and Procedures have not been updated on a systematic basis which would provide up to date methods of handling Inmates and use of new methods, techniques and tools.

I have determined that there is no ongoing In-Service training regarding Policies and Procedures,

I have determined that it there is an extreme liability when untrained Deputies not assigned to Detention and not trained for Detention respond to assist a Detention Deputy inside a Detention Facility.

I have determined that Deputies have not read the Policies and Procedures and are unfamiliar with proper methods of performing their assigned jobs and responsibilities.

I have determined that the Deputies as listed in this Action do not follow the written Policies and Procedures regarding Use of Minimum Force, Rights of Inmates and Proper Medical Procedures.

I have determined that Supervisors do not perform their duties in requiring personnel to follow the written Policies and Procedures.

I have determined that there is no Policy regarding assault on an Inmate by another Inmate.

I have determined that there is no Policy regarding the use of Pepper (OCAT) spray on Inmates in the Detention Facility.

I have determined that there is no Policy regarding the use of a Taser on Inmates in the Detention Facility.

I have determined that there is no written documentation of Training of any of the Personnel as listed in the Civil Action, other than copies of some certificates.

I have determined that the Policy for Use of Non-Deadly Force was not followed in the movement of Inmate Christopher Luke due to the fact that he was not medically assessed for injuries when there were apparent symptoms of disorientation and head injuries and other inmates were not questioned about what had occurred prior to attempting to move Inmate Christopher Luke which resulted in excessive force being used.

I have determined that the Emergency Medical Policy (D-109) was not adhered to in the movement of Inmate Christopher Luke due to the fact that there was no immediate Medical assessment and no treatment.

I have determined that Inmates Rights were violated as prescribed in the Policy for Inmate Rights (E- I 01) regarding his Rights concerning Personal Abuse and Personal Injury and the Right to the use of Minimum Physical Force.

Review of the Policy and Procedure Directive of the Neshoba County Law Enforcement Center reveals that there are inadequate or no Policies regarding Telephone usage by Inmates. Failure to monitor Inmates' Telephone usage is cause for a breach in security, and a liability issue for the law enforcement agency. Failure to monitor Inmates while using the telephone allows for unlawful usage (specifically unwanted collect telephone calls and harassing telephone calls), destruction of property, and the possibility of unlawful activity including requests for contraband and assistance in escape.

Careful review of the Depositions reveal that there are discrepancies in statements of different Deputies and inaccuracies in the dates of filing reports.

Specific information on the attention given to Monitoring Inmate activities on the closed circuit device is lacking. The lapse of time in the occurrence of the original injury to Christopher Luke and the response to the Day Room by Deputies raises the question as to the attention given to the screen of the monitoring device and whether or not the Day Room where the incident occurred was actually being adequately monitored at the time.

The failure to monitor the Inmates in the Day Room because a group of ladies was holding a Religious meeting in another part of the facility is a failure to follow proper policies and procedures since a standard policy would require that visitors should at all times have a Deputy present with them for safety and security purposes.

Discrepancies and inaccuracies in the dating of Initial Incident Reports points to collusion in determining facts and clouds the credibility of all the reports. Reports must be complete, accurate, and filed in a timely manner. This is a basic in Law Enforcement.

Use of Outside training for Detention Deputies does not insure that all training needs are met. It is imperative that all Deputies be trained specifically for their agency's General Orders and Policies and Procedures and well as Post Orders. A clear understanding of all of the above is a minimum requirement in providing for the Safety and Welfare of the Public, the Deputy, and the Inmate. It is apparent that none of these listed have been addressed by the Neshoba County Sheriff's Office at the initial employment of personnel and/or in ongoing in service annual updates.

That this incident and resulting injury to Christopher C. Luke would not have occurred had the Neshoba County Sheriff's Office and the named Personnel followed proper procedure in Supervising Inmates by providing Deputies in the Day Room, by supervising telephone usage. Had Inmates been supervised properly by Deputies this incident could not have occurred.

That the Neshoba County Sheriff's Office failed to follow the basic rule that treatment of an Inmate should render him no "Worse Off" upon release as he was when arrested. That the Neshoba County Sheriff's Office failed to follow the basic rule that the purpose of a Detention Facility is for the Safety of the Public, Safety of the Detention Officers and Safety of the Inmate.

The injuries to Christopher Luke are consistent with failure to implement and follow basic policies, procedures and post orders. The failure to monitor an assemblage of Inmates, failure to monitor telephone usage, and failure to respond in a timely fashion all attributed to the injuries sustained. These injuries were worsened by failure to implement and follow procedures regarding Medical assessment and treatment, improper handling of a disoriented inmate, improper use of Pepper Spray (OCAT), followed by delayed medical treatment.

Further Affiant sayeth not.

_____
RICK VAN EGMOND

SWORN TO AND SUBSCRIBED BEFORE ME this 17th day of June, 2015.

(Seal) STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 60063
SUSAN ROZINA WOODS
Commission Expires
July 10, 2016
RANKIN COUNTY

_____
NOTARY PUBLIC

7