IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHRISTOPHER LUKE                                                        PLAINTIFF

VS.                                        CIVIL ACTION NO. 3:14-cv-240-DPJ-FKB

NESHOBA COUNTY, MISSISSIPPI, ET AL.                          DEFENDANTS

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
PROPOSED EXPERT OPINIONS OF RICK VAN EGMOND**

COME NOW Defendants Tommy Waddell, Jimmy Reid, Nick Walker, Harvey Hickman,

Billy Guess, Angel Crockett, Josh Burt, and Ken Spears, individually and in their official capacities,

and Neshoba County, Mississippi, by and through counsel, and file this their Memorandum of

Authorities in support of their Motion in Limine to Exclude Expert Opinions of Rick Van Egmond,

as follows:

**INTRODUCTION**

Plaintiff filed this civil action against Neshoba County, Mississippi, and certain law

enforcement personnel under 42 U.S.C. § 1983 and the Mississippi Tort Claims Act arising out of

an incident occurring on May 28, 2013 at the Neshoba County Jail in Philadelphia, Mississippi.

Specifically, Plaintiff claims Defendants failed to protect him from being assaulted by another

inmate in his housing unit, used excessive force against him while attempting to assist and restrain

him, failed to provide him with adequate medical treatment, and deprived him of equal protection,

all in violation of his constitutional rights.  Plaintiff further asserts state law claims under the

Mississippi Tort Claims Act.  A detailed description of the facts and circumstances regarding the

subject incident is contained in Defendants' Memorandum of Authorities in support of their Motion

for Summary Judgment and exhibits referenced therein, which are adopted and incorporated herein

by reference.  *See* Docs. 65, 66.

On February 9, 2015, Plaintiff designated Rick Van Egmond, a former deputy with the Hinds County Sheriff's Office, as an expert witness to testify regarding what he perceives as shortcomings by Neshoba County Jail officials as it relates to the subject incident.  *See* Plaintiff's Designation of Expert Witnesses, Doc. [40].  On February 12, 2015, Plaintiff produced an amended expert report from Van Egmond.  *See* Amended Report (dated 2/6/15), Doc. [42-1].  On or about May 12, 2015, Plaintiff produced a supplemental report from Mr. Van Egmond that contained additional opinions. *See* Supplemental Report (dated 5/12/15), Doc. [69-5].  On May 26, 2015, the court-ordered deadline for filing dispositive motions, Defendants filed their Motion for Summary Judgment and Memorandum of Authorities in support of the same.  *See* Docs. [65, 66].

On June 17, 2015, Plaintiff filed his Response to Defendant's Motion for Summary Judgment, with a newly produced letter from Mr. Van Egmond dated March 8, 2015, as well as an affidavit from Mr. Van Egmond dated June 17, 2015, which summarizes his opinions.  *See* Letter (dated 3/8/15), Doc. [69-4]; Affidavit, Doc. [69-6].

The proposed expert opinions contained in Mr. Van Egmond's various reports and in his affidavit constitute improper legal conclusions regarding the ultimate issues presented in this case. As set forth below, his opinions are impermissible and irrelevant, and they should be excluded.

## LAW AND ARGUMENT

### A.    Mr. Van Egmond's legal conclusions are irrelevant and inadmissible

Rule 702 of the Federal Rules of Evidence establishes the following standards for determining whether expert testimony is admissible:

> (a)    the expert's scientific, technical, or other specialized knowledge

<u>[must] help the trier of fact to understand the evidence or to determine a fact in issue;</u>

    (b)    the testimony [must be] based on sufficient facts or data;

    (c)    the testimony [must be] the product of reliable principles and methods; and

    (d)    the expert [must have] reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. "Expert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). *See also* FED. R. EVID. 402 ("Irrelevant evidence is not admissible.").

Although Federal Rule of Evidence 704 states that that "[a]n opinion is not objectionable just because it embraces an ultimate issue," the Fifth Circuit has repeatedly held that this rule "does not permit experts to offer legal conclusions." *McBroom v. Payne*, 478 Fed. Appx. 196, 200 (5th Cir. 2012) (finding no abuse of discretion in the trial court's refusal to allow plaintiff's expert witness to testify that defendant officer used excessive force), citing *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (noting that legal conclusions by experts are inadmissible); *Mayfield v. Brewer*, 2014 U.S. Dist. LEXIS 153454, *4 (S.D. Miss. Oct. 28, 2014) (excluding proposed expert from testifying as to reasonableness of use of force by officer); *Peters v. City of Waveland*, 2012 U.S. Dist. LEXIS 75736, at *2 (S.D. Miss. Feb. 20, 2012) (precluding an expert from testifying that the officer's use of force was reasonable "since that is an impermissible legal conclusion").

"Opinions that provide legal conclusions are not helpful to the trier of fact." *Peters*, 2012 U.S. Dist. LEXIS 75736, at 4. "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v.*

*Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

In another case against a municipality and its law enforcement officers, this Court granted the defendants' motion *in limine* to exclude the plaintiff's proposed expert witness on police policies and procedures, whose reports concluded that the defendant police officer had used excessive force against the plaintiff during a *Terry* stop. *Jadbabaei v. City of Florence*, 2014 U.S. Dist. LEXIS 137253 (S.D. Miss. Sept. 29, 2014). The Court, finding that the proposed expert's testimony consisted of impermissible legal conclusions, correctly held that "questions which would merely allow the witness to tell the jury what result to reach are not permitted," and a witness is not permitted to give legal conclusions. *Id.*, at 4-5. Because the reports of the proposed expert were limited to essentially a legal opinion on the ultimate issue in the case (that the officer's use of force was excessive), the expert was excluded from testifying at trial. *Id.*, at 5. The same issue is presented in the case *sub judice*.

Like the proposed expert in *Jadbabaei*, Mr. Van Egmond's expert reports and affidavit consist almost exclusively of impermissible legal conclusions regarding the ultimate issues in this case. Such improper and irrelevant opinions contained in his report dated February 6, 2015 include the following:

> I will show that Deputies were **negligent** in their Supervision of the Open "Day Room" and the use of the telephone which resulted in the assault of Christopher C. Luke by not following proper procedures in Supervision of Inmates and Telephone usage.
>
> I will show that the Deputies were **negligent** in monitoring Surveillance cameras for an unreasonable length of time. Evidence will show that Christopher C. Luke was assaulted and received significant injuries in view of cameras but did not receive medical attention immediately due to failure to monitor the surveillance cameras.

I will show that Deputies were **negligent** in their supervision of Inmates which resulted in a delayed Response time due to failure to follow proper supervisory procedures by not having a Deputy present.

I will show that Responding Deputies acted in a **reckless** manner disregarding their training in not accessing (sic) the apparent medical condition of Christopher C. Luke when evidence on camera would have shown the injury, and that Inmates had reported the injury.

I will show that Responding Deputies were **negligent** in their failure to follow proper procedures in dealing with an Inmate displaying symptoms of the mentally impaired when surveillance video would have indicated a head injury to Christopher C. Luke. Following Minimum Standards Training would have indicated signs and indicators of a mental problem as a result of head injuries and would have resulted in the proper response by Deputies.

I will show that Deputies use **unnecessary force** in subduing Christopher C. Luke by failing to note the signs and indicators of the injuries consistent with mental impairment as Minimum Standards Training would have indicated.

I will show that Deputies were **negligent** in delaying Medical Attention to Christopher C. Luke with the apparent need evidenced by any one of the following indicators: mental condition, bruising, lacerations, and blood.

I will show that there was **excessive and improper use of force** in attempting to remove handcuffs from Christopher C. Luke when medical attention was needed and the handcuffs posed no immediate problem for Christopher C. Luke.

I will show that Jail and Sheriff's Office Supervisors were **negligent** in their Supervision of Jailers/Deputies in the Duties by not assigning personnel to surveillance cameras, assigning personnel to supervise day rooms, assigning personnel to monitor telephone usage, and failure to determine a need for medical assistance after responding to the scene.

I will show that the Neshoba County Sheriff's Office was **negligent** in their untimely response to Medical Treatment for Christopher C. Luke by not affording immediate attention to obvious injuries to Christopher C. Luke immediately after viewing the visible injuries.

*See* Amended Report (dated 2/6/15), Doc. [42-1] (emphasis added).

The entirety of Mr. Van Egmond's Supplemental Report dated March 8, 2015 (which was

untimely produced after the discovery deadline as an attachment to his Response to Defendant's

Motion for Summary Judgment) constitutes impermissible legal conclusions – including opinions

regarding the reasonableness of force used by officers in attempting to assist and restrain Plaintiff

– and these opinions are irrelevant, invade the province of the Court, and are inadmissible.[1]

*See* Letter (dated 3/8/15)Doc. [69-4].

Mr. Van Egmond's Supplemental Report dated May 12, 2015 also contains the following

impermissible legal conclusions which should be excluded:

> I have determined that the Policy for Use of Non-Deadly Force was not
> followed in the movement of Inmate Christopher Luke due to the fact that he
> was not medically assessed for injuries when there were apparent symptoms
> of disorientation and head injuries and other inmates were not questioned
> about what had occurred prior to attempting to move Inmate Christopher
> Luke which resulted in **excessive force** being used.
>
> I have determined that the use of Pepper Spray on Christopher Luke was
> **Excessive Force** due to not determining and addressing his medical condition
> including possible head injury, obvious disorientation and the presence of
> open wounds.
>
> I have determined that Inmates Rights were violated as prescribed in the
> Policy for Inmate Rights (E-101) regarding his Rights concerning Personal
> Abuse and Personal Injury and the Right to use of Minimum Physical Force.

*See* Doc. [69-5] (emphasis added).

Many of the above proposed expert opinions were copied and pasted into Mr. Van Egmond's

affidavit that Plaintiff attached as an exhibit to his Response to Defendant's Motion for Summary

Judgment, with the phrase "deliberate indifference" added or often substituted in place of the word

---

[1] Mr. Van Egmond admits in his report dated March 8, 2015 that his opinions are based
strictly on what is displayed by surveillance video, and he did not consider any of the information
contained in the written reports of the officers involved regarding the full context of the situation
and what occurred outside the reach of the surveillance cameras.  *See* Doc. [69-4].

"negligence."[2]  *See* Affidavit, Doc. [69-6].  Impermissible legal conclusions contained in Mr. Van

Egmond's affidavit that should be excluded include the following:

> It is my opinion that Neshoba County **failed to protect** Christopher C. Luke thus he was unlawfully assaulted by another Inmate as depicted on surveillance video in an unsupervised "day room."  That Deputies were **negligent** in monitoring Surveillance cameras for an unreasonable length of time.  That Jail and Sheriff's Office Supervisors were **negligent** in their Supervision of Jailers/Deputies in the Duties (sic).

> That Deputies **were negligent** in their Supervision of the Open "Day Room" and the use of the telephone which resulted in the assault of Christopher C. Luke by not following proper procedures in Supervision of Inmates and Telephone usage.

> That Deputies **acted with deliberate indifference in their supervision of Inmates** which resulted in a delayed response time due to failure to follow proper supervisory procedures by not having a Deputy present.  Evidence will show that Christopher C. Luke was assaulted and received injuries in view of cameras but did not receive medical attention immediately due to failure to monitor the surveillance cameras.  That Deputies did not respond, in a timely manner, to the holding area at the apparent summons of other Inmates.

> That Responding Deputies **acted in a reckless manner and with deliberate indifference** in not assessing the apparent medical condition of Christopher C. Luke.  That Responding Deputies **were negligent** in their failure to follow proper procedures in dealing with an Inmate displaying symptoms of the mentally impaired.

> **Excessive force** as viewed in law enforcement relates to any force used above the necessary force required to subdue a subject.  Due to the physical condition of Christopher Luke as apparent in the surveillance video it is evidence that **negligence** in monitoring activities in the day room led to Deputies acting in a manner inconsistent with that required to address a medical condition of a detainee.

> That Deputies used **unnecessary and excessive force** in subduing Christopher C. Smith (sic) by failing to note the signs and indicators of the

---

[2] Mr. Van Egmond's new and supplemental opinions contained in his affidavit are untimely since they were produced after the discovery deadline in this case, and they should also be stricken for this reason.

injuries consistent with mental impairment as Minimum Standards Training would have indicated.

That there was **excessive and improper use of force** in attempting to remove handcuffs from Christopher C. Luke when medical attention was needed and the handcuffs posed no immediate problem for Christopher C. Luke.

Failure to adequately access (sic) the medical condition of Christopher Luke, to summon proper Medical personnel, and Supervisory Personnel prior to moving Christopher Luke is contrary to proper procedure in responding to a Medical Emergency as prescribed in training directed by the Board of Standards and Training Division of the Mississippi Department of Public Safety and can be viewed as **excessive force**.

Failure to recognize the incoherent response of Christopher C. Luke and the possibility of head injuries without Medical assessment and moving Christopher C. Luke is a result of not following procedures prescribed in training directed by the Board of Standards and Training Division of the Mississippi Department of Public Safety and can be viewed as **excessive force**.

I have determined that the use of Pepper Spray on Christopher Luke was **Excessive Force** due to not determining and addressing his medical condition including possible head injury, obvious disorientation and the presence of open wounds.

That the Neshoba County Sheriff's Office **acted with deliberate indifference** in their untimely response to Medical Treatment for Christopher C. Luke by not affording immediate attention to obvious injuries to Christopher C. Luke immediately after viewing the visible injuries.

That the Neshoba County Sheriff's Office **acted with deliberate indifference** in their failure to review surveillance tapes in a timely manner, thus delaying Christopher C. Luke's medical treatment.  Immediate review of the tapes would have shown the severity of the injuries and the improper response of Deputies and would have resulted in a timely treatment of the injuries.

That Deputies **acted with deliberate indifference** in delaying Medical Attention to Christopher C. Luke. That the Neshoba County Sheriff's Office was negligent in their untimely response to Medical Treatment for Christopher C. Luke. That the Neshoba County Sheriff's Office was

**negligent** in their failure to review surveillance tapes in a timely manner, thus delaying Christopher C. Luke's medical treatment.

That Responding Deputies **acted with deliberate indifference** disregarding their training in not assessing the apparent medical condition of Christopher C. Luke when evidence on camera would have shown the injury, and that Inmates had reported the injury.

That Responding Deputies **acted with deliberate indifference** in their failure to follow proper procedures in dealing with an Inmate displaying symptoms of the mentally impaired when surveillance video would have indicated a head injury to Christopher C. Luke. Following Minimum Standards Training would have indicated signs and indicators of a mental problem as a result of head injuries and would have resulted in the proper response by Deputies.

That Deputies **acted with gross and reckless disregard and deliberate indifference** in delaying Medical Attention to Christopher c. Luke with the apparent need evidenced by any one of the following indicators: mental condition, bruising, lacerations, and blood.

The Deputies **acted with deliberate indifference** when they failed to follow proper procedures and practices put forth by Minimum Standards of Care for Detainees by not following accepted practices as prescribed in Detention Officer Training as prescribed by the Mississippi Department of Public Safety Board of Standards and Training, Detention Services Division.

That Deputies **acted with deliberate indifference** when they failed to follow proper procedures and practices put forth by Minimum Standards of Care for Detainees by not following accepted practices as prescribed in Detention Officer Training as prescribed by the Mississippi Department of Public Safety Board of Standards and Training, Detention Services Division; Specifically Supervision of Inmates, Telephone Usage Supervision, Response to Medical Emergencies, and Handling a Mentally Impaired Inmate.

That Jail and Sheriff's Office Supervisors **acted with reckless disregard** in their Supervision of Jailers/Deputies in the Duties by not assigning personnel to surveillance cameras, assigning personnel to supervise day rooms, assigning personnel to monitor telephone usage, and failure to determine a need for medical assistance after responding to the scene.

I have determined that the Neshoba County Sheriff's Office is **negligent** in issuing, accounting for, requirement of reading, and training in Policies and Procedures and Post Orders.

-9-

> I have determined that the Policy for Use of Non-Deadly Force was not followed in the movement of Inmate Christopher Luke due to the fact that he was not medically assessed for injuries when there were apparent symptoms of disorientation and head injuries and other inmates were not questioned about what had occurred prior to attempting to move Inmate Christopher Luke which **resulted in excessive force** being used.
>
> I have determined that **Inmates Rights were violated** as prescribed in the Policy for Inmate Rights (E-101) regarding his Rights concerning Personal Abuse and Personal Injury and the Right to use of Minimum Physical Force.

*See* Doc. [69-6] (emphasis added).

Mr. Van Egmond's opinions regarding whether jail officials were "deliberately indifferent" to Plaintiff's safety or serious medical needs and whether jail officials used reasonable force in attempting to restrain Plaintiff clearly constitute impermissible legal conclusions that invade the province of the Court, and they are irrelevant to the question of whether Plaintiff's constitutional rights were violated.

Further, Mr. Van Egmond's opinions regarding allegedly "negligent" conduct by any of the Neshoba County Defendants are irrelevant to the constitutional claims at issue here, as negligence is insufficient to establish a constitutional violation under Section 1983. *Hoskins v. Epps*, 2013 U.S. Dist. LEXIS 126779, 10 (S.D. Miss. Sept. 5, 2013), citing *Daniels v. Williams*, 474 U.S. 327 (1986). Additionally, Plaintiff's negligence claims asserted against each of these Defendants under state law are barred by the immunity provisions of the Mississippi Tort Claims Act because his claims arose while he was incarcerated in a county jail. *See* MISS. CODE ANN. § 11-46-9(1)(m). *See also* Memorandum of Authorities in Support of Motion for Summary Judgment, Doc. [66], at 24-26. Accordingly, any opinions by Mr. Van Egmond that would bear on the issue of negligence are irrelevant and, thus, inadmissible.

For all of the foregoing reasons, the above-referenced proposed testimony of Mr. Van Egmond constitutes irrelevant and impermissible legal conclusions that should be stricken and excluded.

**B.      Mr. Van Egmond's opinions regarding Defendants' compliance with Neshoba County policies or standard law enforcement practices are irrelevant and inadmissible**

"A law enforcement officer's violation of department policy 'is constitutionally irrelevant' for purposes of a claim brought under § 1983." *Mayfield v. Brewer*, 2014 U.S. Dist. LEXIS 153454, *6 (S.D. Miss. Oct. 28, 2014) (striking opinions of plaintiff's proposed expert that defendant officer violated his department's use-of-force policy by failing to use reasonable alternatives and by employing an excessive and unwarranted amount of force on plaintiff), citing *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009) ("Violations of non-federal laws cannot form a basis for liability under § 1983, and qualified immunity is not lost because an officer violates department protocol."). *See also McCarthy v. Waddell*, 2014 U.S. Dist. LEXIS 53492, at *3 (S.D. Miss. Apr. 17, 2014) (providing that breach of a county policy fails to establish a constitutional violation under § 1983).

Similarly, it is irrelevant to the constitutional claims presented here that any of these Defendants may not have followed "best practices" in the law enforcement industry as it relates to their interactions with Plaintiff at the Neshoba County Jail.  *See Watson v. Bryant*, 532 Fed. Appx. 453, 458 (5th Cir. 2013) (holding that the "failure to follow proper procedure does not prove excessive force.").  Instead, the evidence must be evaluated as it bears on what an objectively reasonable officer would have done under the circumstances, without the benefit of 20/20 hindsight in that analysis. *Watson*, 532 Fed. Appx. at 458.  Testimony regarding the standards of conduct that the law enforcement community has developed for use by its members is irrelevant in determining

-11-

whether a police officer's conduct is "objectively reasonable" under constitutional analysis. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (excluding expert testimony regarding compliance with police practices in excessive force case).  *See also Legg v. Pappas*, 383 Fed. Appx. 547, 550 (7th Cir. 2010) (affirming district court's exclusion of plaintiff's proposed expert testimony regarding police department policies and standards of police practice, as such was "irrelevant to determining what is objectively reasonable under the Fourth Amendment").

Accordingly, Mr. Van Egmond's anticipated testimony regarding his belief that Defendants failed to comply with Neshoba County policies and procedures, law enforcement best practices, or similar standards for police conduct are irrelevant and inadmissible.  Such opinions contained in his February 6, 2015 report that should be stricken and excluded include the following:

> I will show that Deputies were negligent in their Supervision of the Open "Day Room" and the use of the telephone which resulted in the assault of Christopher C. Luke by not following proper procedures in Supervision of Inmates and Telephone usage.

> I will show that Deputies were negligent in their supervision of Inmates which resulted in a delayed Response time due to failure to follow proper supervisory procedures by not having a Deputy present.

> I will show that Responding Deputies acted in a reckless manner disregarding their training in not accessing (sic) the apparent medical condition of Christopher C. Luke when evidence on camera would have shown the injury, and that Inmates had reported the injury.

> I will show that Responding Deputies were negligent in their failure to follow proper procedures in dealing with an Inmate displaying symptoms of the mentally impaired when surveillance video would have indicated a head injury to Christopher C. Luke. Following Minimum Standards Training would have indicated signs and indicators of a mental problem as a result of head injuries and would have resulted in the proper response by Deputies.

-12-

I will show that Deputies used unnecessary force in subduing Christopher C. Luke by failing to note the signs and indicators of the injuries consistent with mental impairment as Minimum Standards Training would have indicated.

I will show that the reactions of Christopher C. Luke were not aggressive but that any signs of resistance would be consistent with those of someone with a head injury as indicated in training in Detention Officers Training developed by the Board of Standards and Training.

I will show that improper booking and holding procedures were followed as displayed on the video surveillance of the booking area when it was evident that a female was shown moving about freely in the booking area and only after a lengthy amount of time was she photographed for intake as an inmate. This female was allowed to witness events surrounding the detaining of Christopher C. Luke following his assault. All showing disregard of training as prescribed by Detention Officer training developed by the Board of Standards and Training.

I will show that Deputies failed to follow proper procedures and practices put forth by the Minimum Standards of Care for Detainees by not following accepted practices as prescribed in Detention Officer Training as prescribed by the Mississippi Department of Public Safety Board of Standards and Training, Detention Services Division; Specifically Supervision of Inmates, Telephone Usage Supervision, Response to Medical Emergencies, and Handling a Mentally Impaired Inmate.

I will show that this incident and resulting injury to Christopher C. Luke would not have occurred had the Neshoba County Sheriff's office and the named Personnel followed proper procedure in Supervising Inmates by providing Deputies in the Day Room, by supervising telephone usage. Had Inmates been supervised properly by Deputies this incident could not have occurred.

I will show that the Neshoba County Sheriff's Office failed to follow the basic rule that treatment of an Inmate should render him no "Worse Off" upon release as he was when arrested.

I will show that the Neshoba County Sheriff's Office failed to follow the basic rule that the purpose of a Detention Facility is for the Safety of the Public, Safety of the Detention Officers and Safety of the Inmate.

*See* Doc. [42-1].

-13-

Additional opinions contained in Mr. Van Egmond's supplemental expert report dated March

8, 2015 which should be excluded for the same reasons include the following:

Due to the physical condition of Christopher Luke as apparent in the surveillance video it is evident that negligence in monitoring activities in the day room led to Deputies acting in a manner inconsistent with that required to address a medical condition of a detainee.

Failure to adequately access (sic) the medical condition of Christopher Luke, to summon proper Medical personnel, and Supervisory Personnel prior to moving Christopher Luke is contrary to proper procedure in responding to a Medical Emergency as prescribed in training directed by the Board of Standards and Training Diviosn of the Mississippi Department of Public Safety and can be viewed as excessive force.

Failure to recognized (sic) incoherent response of Christopher C. Luke and the possibility of head injuries without Medical assessment and moving Christopher C. Luke is a result of not following procedures prescribed in training directed by the Board of Standards and Training Division of the Mississippi Department of Public Safety and can be viewed a excessive force (sic).

Use of OCAT (Pepper) Spray on an individual with a suspected head injury is regarded as excessive force as prescribed in OCAT training and could further injure the person on which the spray was used.

Not recognizing a Medical Emergency in the case of Christopher C. Luke determines that any movement or handling of Christopher C. Luke other than that for Medical Care and treatment would constitute excessive force when movement involved dealing with a Mental or Medical Impairment as described in training directed by the Board of Standards and Training Division of the Mississippi Department of Public Safety.

Hitting, striking, pulling or wrestling with an apparent or suspected mentally impaired inmate would be considered excessive force as described in training directed by the Board of Standards and Training Division of the Mississippi Department of Public Safety.

The entire incident reveals that improper procedures were used in dealing with movement of Christopher C. Luke; due to improper supervision of inmate activities resulting in the initial assault; and improper monitoring of the Day Room which would have provided proper visual documentation of

-14-

> the Medical and possible Mental condition of Christopher c. Luke thus indicating a need for a more proper response in dealing with and moving Christopher C. Luke.

*See* Doc. [69-4].

Similar opinions contained in Mr. Van Egmond's supplemental report dated May 12, 2015 which are irrelevant and should be excluded include the following:

> I have determined that the Neshoba County Sheriff's Office does not have a Policy or Procedure regarding the use of telephones by Inmates in their custody which would require the presence of a Deputy.[3]

> I have determined that Policies and Procedures have not been presented to the Personnel and have not been taught in a formal training session as so indicated in their depositions.

> I have determined that Policies and Procedures have not been updated on a systematic basis which would provide up to date methods of handling Inmates and use of new methods, techniques and tools.

> I have determined that there is no ongoing In-Service training regarding Policies and Procedures.

> I have determined that it there (sic) is an extreme liability when untrained Deputies not assigned to Detention and not trained for Detention respond to assist a Detention Deputy inside a Detention Facility.

> I have determined that Deputies have not read the Policies and Procedures and are unfamiliar with proper methods of performing their assigned jobs and responsibilities.

> I have determined that the Deputies as listed in this Action do not follow the written Policies and Procedures regarding Use of Minimum Force, Rights of Inmates and Proper Medical Procedures.

> I have determined that Supervisors do not perform their duties in requiring personnel to follow the written Policies and Procedures.

---

[3] Plaintiff was not using a telephone when he was struck in the head by a fellow inmate in his housing unit.  *See* Surveillance Video (conventionally filed), Doc. [65-2].  Thus, Mr. Van Egmond's opinion in this regard is wholly irrelevant and should be stricken.

I have determined that there is no Policy regarding assault on an Inmate by another Inmate.

I have determined that there is no Policy regarding the use of Pepper (OCAT) spray on Inmates in the Detention Facility.

I have determined that there is no Policy regarding the use of a Taser on Inmates in the Detention Facility.[4]

I have determined that there is no written documentation of Training of any of the Personnel as listed in the Civil Action.

I have determined that the Policy for Use of Non-Deadly Force was not followed in the movement of Inmate Christopher Luke due to the fact that he was not medically assessed for injuries when there were apparent symptoms of disorientation and head injuries and other inmates were not questioned about what had occurred prior to attempting to move Inmate Christopher Luke which resulted in excessive force being used.

I have determined that the Emergency Medical Policy (D-109) was not adhered to in the movement of Inmate Christopher Luke due to the fact that there was no immediate Medical assessment and no treatment.

I have determined that Inmates Rights were violated as prescribed in the Policy for Inmates Rights (E-101) regarding his Rights concerning Personal Abuse and Personal Injury and the Right to the use of Minimum Physical Force.

Review of the Policy and Procedure Directive of the Neshoba County Law Enforcement Center reveals that there are inadequate or no Policies regarding Telephone usage by Inmates.  Failure to monitor Inmates' Telephone usage is cause for a breach in security, and a liability issue for the law enforcement agency. Failure to monitor Inmates while using the telephone allows for unlawful usage (specifically unwanted collect telephone calls and harassing telephone calls), destruction of property, and the possibility of unlawful activity including requests for contraband and assistance in escape.[5]

---

[4] There is no allegation or evidence that a Taser was ever used against Plaintiff during his incarceration at the Neshoba County Jail.  Thus, Mr. Van Egmond's opinion in that regard are wholly irrelevant and should be stricken.

[5] There is no allegation or evidence that Plaintiff was injured as a result of his use of the telephone at the Neshoba County Jail.  There likewise is no evidence that Plaintiff used the

Specific information on the attention given to Monitoring Inmate activities on the closed circuit device is lacking. The lapse of time in the occurrence of the original injury to Christopher Luke and the response to the Day Room by Deputies raises the question as to the attention given to the screen of the monitoring device and whether or not the Day Room where the incident occurred was actually being adequately monitored at the time.

The failure to monitor the Inmates in the Day Room because a group of ladies was holding a Religious meeting in another part of the facility is a failure to follow proper policies and procedures since a standard policy would require that visitors should at all times have a Deputy present with them for safety and security purposes.

The injuries to Christopher Luke are consistent with failure to follow basic policies, procedures and post orders. The failure to monitor an assemblage of Inmates, failure to monitor telephone usage, and failure to respond in a timely fashion all attributed to the injuries sustained. These injuries were worsened by failure to follow proper procedures regarding Medical assessment and treatment, improper handling of a disoriented inmate, improper use of Pepper Spray (OCAT), improper use of a Taser, followed by delayed medical treatment.

Use of Outside training for Detention Deputies does not insure that all training needs are met. It is imperative that all Deputies be trained specifically for their agency's General Orders and Policies and Procedures and (sic) well as Post Orders. A clear understanding of all of the above is a minimum requirement in providing for the Safety and Welfare of the Public, the Deputy, and the Inmate. It is apparent that none of these listed have been addressed by the Neshoba County Sheriff's Office at the initial employment of personnel and/or in ongoing in service annual updates.

*See* Doc. [69-5].

Many of the above opinions are also included in some manner in Mr. Van Egmond's affidavit submitted with Plaintiff's Response to Defendant's Motion for Summary Judgment. Opinions contained in Mr. Van Egmond's affidavit regarding his belief that certain policies and procedures

---

telephone to cause a breach in security, harass others, request contraband, or seek assistance with escape. Thus, Mr. Van Egmond's proposed expert opinions in that regard are wholly irrelevant and should be stricken.

or law enforcement standard practices were not followed – all of which are irrelevant and should be stricken and excluded – include the following:

> That this incident and resulting injury to Christopher c. Luke would not have occurred had the Neshoba County Sheriff's Office and the named Personnel followed proper procedure in Supervising Inmates.

> That Deputies were negligent in their Supervision of the Open "Day Room" and the use of the telephone which resulted in the assault of Christopher C. Luke by not following proper procedures in Supervision of Inmates and Telephone usage.

> That Responding Deputies acted in a reckless manner and with deliberate indifference in not assessing the apparent medical condition of Christopher C. Luke. That Responding Deputies were negligent in their failure to follow proper procedures in dealing with an Inmate displaying symptoms of the mentally impaired.

> Due to the physical condition of Chrstopher Luke as apparent in the surveillance video it is evident that negligence in monitoring activities in the day room led to Deputies acting in a manner inconsistent with that required to address a medical condition of a detainee.

> That Deputies used unnecessary and excessive force in subduing Christopher C. Smith (sic) by failing to note the signs and indicators of the injuries consistent with mental impairment as Minimum Standards Training would have indicated.

> Failure to adequately access (sic) the medical condition of Christopher Luke, to summon proper Medical personnel, and Supervisory Personnel prior to moving Christopher Luke is contrary to proper procedure in responding to a Medical Emergency as prescribed in training directed by the Board of Standards and Training Division of the Mississippi Department of Public Safety and can be viewed as excessive force.

> Failure to recognize the incoherent response of Christopher C. Luke and the possibility of head injuries without Medical assessment and moving Christopher C. Luke is a result of not following procedures prescribed in training directed by the Board of Standards and Training Division of the Mississippi Department of Public Safety and can be viewed as excessive force.

That Responding Deputies acted with deliberate indifference disregarding their training in not assessing the apparent medical condition of Christopher C. Luke when evidence on camera would have shown the injury, and that Inmates had reported the injury.

That Responding Deputies acted with deliberate indifference in their failure to follow proper procedures in dealing with an Inmate displaying symptoms of the mentally impaired when surveillance video would have indicated a head injury to Christopher C. Luke. Following Minimum Standards Training would have indicated signs and indicators of a mental problem as a result of head injuries and would have resulted in the proper response by Deputies.

That the reactions of Christopher C. Luke were not aggressive but that any signs of resistance would be consistent with those of someone with a head injury as indicated in training in Detention Officers Training developed by the Board of Standards and Training.

That Deputies acted with deliberated indifference when they failed to follow proper procedures and practices put forth by Minimum Standards of Care for Detainees by not following accepted practices as prescribed in Detention Officer Training as prescribed by the Mississippi Department of Public Safety Board of Standards and Training, Detention Services Division.

That improper booking and holding procedures were followed as displayed on the video surveillance of the booking area when it was evident that a female was shown moving about freely in the booking area and only after a lengthy amount of time was she photographed for intake as an inmate. This female was allowed to witness events surrounding the detaining of Christopher C. Luke following his assault. All showing disregard of training as pr    escribed by Detention Officer training developed by the Board of Standards and Training.

That Deputies acted with deliberate indifference when they failed to follow proper procedures and practices put forth by Minimum Standards of Care for Detainees by not following accepted practices as prescribed in Detention Officer Training as prescribed by the Mississippi Department of Public Safety Board of Standards and Training, Detention Services Division; Specifically Supervision of Inmates, Telephone Usage Supervision, Response to Medical Emergencies, and Handling a Mentally Impaired Inmate.

I have determined that the Neshoba County Sheriff's Office does not have a Policy and Procedure Manual in place by the current Sheriff Tommy

-19-

Waddell, as ordered, and is operating under an inadequate Policy and Procedure Manual adopted by a former Sheriff.

I have determined that the Neshoba County Sheriff's Office is negligent in issuing, accounting for, requirement of reading, and training in Policies and Procedures and Post Orders.

I have determined that the Neshoba County Sheriff's Office does not have a Policy or Procedure regarding use of telephones by Inmates in their custody which would require the presence of a Deputy.

I have determined that Policies and Procedures have not been presented to the Personnel and have not been taught in a formal training session as so indicated in their depositions.

I have determined that Policies and Procedures have not been updated on a systematic basis which would provide up to date methods of handling Inmates and use of new methods, techniques and tools.

I have determined that there is no ongoing In-Service training regarding Policies and Procedures.

I have determined that it there (sic) is an extreme liability when untrained Deputies not assigned to Detention and not trained for Detention respond to assist a Detention Deputy inside a Detention Facility.

I have determined that Deputies have not read the Policies and Procedures and are unfamiliar with proper methods of performing their assigned jobs and responsibilities.

I have determined that the Deputies as listed in this Action do not follow the written Policies and Procedures regarding Use of Minimum Force, Rights of Inmates and Proper Medical Procedures.

I have determined that Supervisors do not perform their duties in requiring personnel to follow the written Policies and Procedures.

I have determined that there is no Policy regarding assault on an Inmate by another Inmate.

I have determined that there is no Policy regarding the use of Pepper (OCAT) spray on Inmates in the Detention Facility.

I have determined that there is no Policy regarding the use of a Taser on Inmates in the Detention Facility.

I have determined that there is no written documentation of Training of any of the Personnel as listed in the Civil Action, other than copies of some certificates.

I have determined that the Policy for Use of Non-Deadly Force was not followed in the movement of Inmate Christopher Luke due to the fact that he was not medically assessed for injuries when there were apparent symptoms of disorientation and head injuries and other inmates were not questioned about what had occurred prior to attempting to move Inmate Christopher Luke which resulted in excessive force being used.

I have determined that the Emergency Medical Policy (D-109) was not adhered to in the movement of Inmate Christopher Luke due to the fact that there was no immediate Medical assessment and no treatment.

I have determined that Inmates Rights were violated as prescribed in the Policy for Inmate Rights (E-101) regarding his Rights concerning Personal Abuse and Personal Injury and the Right to the use of Minimum Physical Force.

Review of the Policy and Procedure Directive of the Neshoba County Law Enforcement Center reveals that there are inadequate or no Policies regarding Telephone usage by Inmates.  Failure to monitor Inmates' Telephone usage is cause for a breach in security, and a liability issue for the law enforcement agency. Failure to monitor Inmates while using the telephone allows for unlawful usage (specifically unwanted collect telephone calls and harassing telephone calls), destruction of property, and the possibility of unlawful activity including requests for contraband and assistance in escape.

Specific information on the attention given to Monitoring Inmate activities on the closed circuit device is lacking. The lapse of time in the occurrence of the original injury to Christopher Luke and the response to the Day Room by Deputies raises the question as to the attention given to the screen of the monitoring device and whether or not the Day Room where the incident occurred was actually being adequately monitored at the time.

The failure to monitor the Inmates in the Day Room because a group of ladies was holding a Religious meeting in another part of the facility is a failure to follow proper policies and procedures since a standard policy would require

that visitors should at all times have a Deputy present with them for safety and security purposes.

Use of Outside training for Detention Deputies does not insure that all training needs are met. It is imperative that all Deputies be trained specifically for their agency's General Orders and Policies and Procedures and (sic) well as Post Orders. A clear understanding of all of the above is a minimum requirement in providing for the Safety and Welfare of the Public, the Deputy, and the Inmate. It is apparent that none of these listed have been addressed by the Neshoba County Sheriff's Office at the initial employment of personnel and/or in ongoing in service annual updates.

That this incident and resulting injury to Christopher C. Luke would not have occurred had the Neshoba County Sheriff's Office and the named Personnel followed proper procedure in Supervising Inmates by providing Deputies in the Day Room, by supervising telephone usage.  Had Inmates been supervised properly by Deputies this incident could not have occurred.

That the Neshoba County Sheriff's Office failed to follow the basic rule that treatment of an Inmate should render him no "Worse Off" upon release as he was when arrested. That the Neshoba County Sheriff's Office failed to follow the basic rule that the purpose of a Detention Facility is for the Safety of the Public, Safety of the Detention Officers and Safety of the Inmate.

The injuries to Christopher Luke are consistent with failure to implement and follow basic policies, procedures and post orders. The failure to monitor an assemblage of Inmates, failure to monitor telephone usage, and failure to respond in a timely fashion all attributed to the injuries sustained. These injuries were worsened by failure to implement and follow procedures regarding Medical assessment and treatment, improper handling of a disoriented inmate, improper use of Pepper Spray (OCAT), followed by delayed medical treatment.

*See* Affidavit, Doc. [69-6].

Each of the opinions set forth above consists of Mr. Van Egmond's assertion that Defendants failed to follow its own policies or failed to follow what he believes are standard practices and procedures in the law enforcement industry, all of which are irrelevant to the question of whether the Defendants' actions were objectively reasonable under the circumstances based on clearly

established law.  *Mayfield*, 2014 U.S. Dist. LEXIS 153454, at 6; *Watson v. Bryant*, 532 Fed. Appx. 453, 458 (5th Cir. 2013).  Further, most of these proposed expert opinions are presented as legal conclusions, which are impermissible, irrelevant, and inadmissible.

Further, as discussed *supra*, to the extent any of the foregoing expert opinions regarding compliance with department policies or standard law enforcement practices tend to support Plaintiff's claim that Defendants were negligent, such testimony is irrelevant since negligence cannot form the basis of a constitutional violation under Section 1983.  *See Hoskins*, 2013 U.S. Dist. LEXIS 126779 at 10.  Similarly, any state law negligence claims against these Defendants under the MTCA are barred by the immunity provided to Defendants under MISS. CODE ANN. § 11-46-9(1)(m).  *See* Memorandum of Authorities in Support of Motion for Summary Judgment, Doc. [66], at 24-26.

Accordingly, each of the above-referenced opinions of Mr. Van Egmond are irrelevant and inadmissible, and, therefore, should be stricken and excluded.

**C.    New opinions of Mr. Van Egmond produced by Plaintiff for the first time as exhibits to his Response to Defendants' Motion for Summary Judgment are untimely and should be excluded**

Plaintiff's expert designation deadline was February 9, 2015.  The court-ordered discovery deadline was May 11, 2015, though Defendants granted Plaintiff an extension to May 18, 2015 to produce any supplemental opinions by Mr. Van Egmond.[6]

The report from Mr. Van Egmond dated March 8, 2015 was not produced to Defendants until Plaintiff filed it as an exhibit to his Response to Defendants' Motion for Summary Judgment on June 17, 2015.  *See* Doc. [69-4].  Mr. Van Egmond's affidavit incorporates the opinions contained in the

---

[6] Plaintiff also granted Defendants an extension until May 21, 2015 to produce responses to Plaintiff's outstanding discovery requests.

March 8, 2015 letter, and the affidavit contains several new opinions not previously disclosed to

Defendants.  *See* Doc. [69-6].  Although many of the opinions contained in Mr. Van Egmond's

affidavit were to a large extent copied and pasted from prior reports, many of his opinions were

changed to assert that Defendants' conduct amounted to "deliberate indifference," likely because that

is the legal standard used for claims of failure-to-protect and inadequate medical care for pre-trial

detainees under the Fourteenth Amendment.  *Id.*  Other untimely opinions contained in Mr. Van

Egmond's affidavit include the following:

> I have determined that the Neshoba County Sheriff's Office does not have a
> Policy and Procedure Manual in place by the current Sheriff Tommy
> Waddell, as ordered, and is operating under an inadequate Policy and
> Procedure Manual adopted by a former Sheriff.

> I have determined that the Neshoba County Sheriff's Office is negligent in
> issuing, accounting for, requirement of reading, and training in Policies and
> Procedures and Post Orders.

*See* Doc. [69-6].

The Court possesses broad, substantial discretion in discovery-related matters.  *Elliot v.*

*Amadas Indus.*, 796 F. Supp. 2d 796, 801 (S.D. Miss. 2011) (citing *Sierra Club, Lone Star Chapter*

*v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996)).  Indeed, the Court has the power to control

its docket "by refusing to give ineffective litigants a second chance to develop their case."  *Id.* (citing

*Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997)

Under Fed. R. Civ. P. 26(a)(2)(B), the written report required with expert designations in

federal court must include the following:

> (i) a complete statement of all opinions the witness will express and the basis
> and reasons for them;

> (ii) the facts or date considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  "A party must make these disclosures at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  Local Rule 26 provides that a "party must make full and complete disclosure as required by Fed. R. Civ. P. 26(a) and L.U.Civ.R. 26(a)(2)(D) no later than the time specified in the case management order."  L.U.Civ.R. 26(a)(2).

Additionally, "[t]he parties must supplement these disclosures when required under Rule 26(e)."  Fed. R. Civ. P. 26(a)(2)(E).  "[A] party is required to supplement its expert disclosures if the court so orders or if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  *Elliot*, 796 F. Supp. 2d at 802 (citing *Sierra Club*, 73 F.3d at 570 n. 42, quoting Fed. R. Civ. P. 26(e)(1)).  "[T]he party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Fed. R. Civ. P. 26(e)(2). While Rule 26(a)(3) provides that pretrial disclosures must be made at least thirty days before trial, it adds the following caveat: "[u]nless the court orders otherwise . . . ."  Fed. R. Civ. P. 26(a)(3).  Local Rule 26 provides that a "party is under a duty to supplement disclosures at appropriate intervals under Fed.

R. Civ. P. 26(e) and in no event later than the discovery deadline established by the case management order."  L.U.Civ.R. 26(a)(5).

If the supplemental report or affidavit in question are comprised of new, previously undisclosed opinions, those opinions were due on February 9, 2015 – Plaintiff's expert designation deadline. *Elliot*, 796 F. Supp. 2d at 802 (citing Fed. R. Civ. P. 26(a)(2)(D), L.U.Civ.R. 26(a)(2)). If the newly-produced opinions were merely supplemental, they were due by the discovery deadline – not after dispositive motions had already been filed.  *Id*. (citing Fed. R. Civ. P. 26(a)(3); L.U.Civ.R. 26(a)(5)).

Whether characterized as new opinions or merely supplemental ones, the opinions of Mr. Van Egmond produced by Plaintiff for the first time on June 17, 2015 with his Response to Defendants' Motion for Summary Judgment clearly are untimely and in violation of the Court's case management order and local rules.

Rule 37 provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). When determining whether to strike an expert's testimony for a party's failure to properly and timely disclose required information, the Court considers the following factors: "(1) the importance of the witnesses' testimony; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order." *Elliot*, 796 F. Supp. 2d at 803.

As to the first factor, Plaintiff's untimely opinions constitute improper legal conclusions, are irrelevant, and inadmissible, as discussed *supra*.  As for the second factor, discovery is closed, and Defendants have no opportunity to cross-examine Mr. Van Egmond regarding his new opinions prior to trial, nor is there an opportunity to designate additional expert opinions in rebuttal.  Further, Plaintiff has given no explanation for his failure to produce these new opinions by Mr. Van Egmond within the Court's discovery deadlines.  The Court should not allow Plaintiff a second opportunity to litigate his case after the discovery and dispositive motions deadlines have expired.

 For the foregoing reasons, the untimely expert opinions of Mr. Van Egmond produced for the first time on June 17, 2015 should be stricken and excluded.

## CONCLUSION

The proposed opinions of Plaintiff's jail procedures expert, Rick Van Egmond, regarding the reasonableness of Defendants' supervision of Plaintiff, their use of force in response to his combativeness, and their provision of medical attention constitute irrelevant and inadmissible legal conclusions regarding the ultimate issues in this case.  Further, Mr. Van Egmond's opinions regarding his belief that Defendants violated certain Neshoba County policies or standard law enforcement practices also are irrelevant and inadmissible.  Additionally, the opinions of Mr. Van Egmond produced for the first time with Plaintiff's Response to Defendants' Motion for Summary Judgment are untimely and in violation of the discovery deadlines imposed by the Court and its local rules.  Accordingly, the proposed expert opinions of Mr. Van Egmond are inadmissible under F.R.E. 702 and F.R.E. 402 and should be stricken and excluded.

Respectfully submitted, this 24th day of July, 2015.

-27-

TOMMY WADDELL, JIMMY REID, NICK
WALKER, HARVEY HICKMAN, BILLY GUESS,
ANGEL CROCKETT, JOSH BURT, KEN
SPEARS, AND NESHOBA COUNTY,
MISSISSIPPI

BY: /s/ *Steven J. Griffin*
    OF COUNSEL

ROY A. SMITH, JR. - BAR # 7599
rsmith@danielcoker.com
STEVEN J. GRIFFIN - BAR # 103218
sgriffin@danielcoker.com
DANIEL, COKER, HORTON & BELL, P.A.
4400 OLD CANTON ROAD, SUITE 400
POST OFFICE BOX 1084
JACKSON, MISSISSIPPI  39215-1084
TELEPHONE:  (601) 969-7607
FACSIMILE:  (601) 969-1116

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2015, I electronically filed the foregoing with the Clerk of

the Court using the ECF system, which sent notification of such filing to the following:

    Robert O. Waller, Esq.
    bobwaller@wallerandwaller.com
       *Attorney for Plaintiff*

           /s/ *Steven J. Griffin*